WATKINS, Judge.
This is an action brought by Joseph Norris Griffin, a former employee of Power Rig Drilling Company, Inc. for injuries allegedly sustained by plaintiff on June 6,1975, while in the course and scope of his employment. The action is an “executive officer” suit naming as sole defendants certain corporate officials of Power Rig, which action was permitted at the time the alleged accident occurred, the worker’s remedy not having been limited to workmen’s compensation for the faults of executive officers until the enactment of Act No. 147 of 1976, which amended LSA-R.S. 23:1032 to bar “executive officer” suits. The trial court rendered judgment for defendants. We affirm.
The Reasons for Judgment of the learned trial judge fully discuss all issues raised by appellant on appeal or that are applicable to a determination of the matter. After having fully reviewed the law, testimony, pleadings, and exhibits, we find the trial court’s reasons to be correct. We, therefore, adopt the Reasons for Judgment of the trial judge as our opinion, and quote from them in their entirety:
“This is an executive officer suit instituted by plaintiff, Joseph Norris Griffin, against the defendants, D. B. Littlefield, W. 0. Simma, P. L. Shine and Denny Wilson, for damages for personal injuries arising out of a work related accident that occurred on or about June 6, 1975.
At the time of the accident in question the plaintiff was employed as a derrick-man for Power Rig Drilling Co., Inc., a closely held corporation with its main offices located in Lafayette, Louisiana. Power Rig conducts drilling operations throughout the Gulf Coast area for various oil companies. The defendant, D. B. Littlefield, is the president of the company. He handles the major capital expenditures of the company, construction, corrected holes and rig shutdown. The defendant, W. 0. Simma, did the sales and contract work for the company. The defendant, P. L. Shine is the secretary of the company and he does its office work. The defendant, Denny Wilson, is the company pilot and supervisor of maintenance of company aircraft.
Beneath the officers and/or directors in the chain of command was one general drilling superintendent who had overall charge of drilling operations. At this time Power Rig owned approximately 10 or 12 drilling rigs. Beneath the general drilling superintendent were three district drilling supervisors who shared responsibility for drilling operations of these rigs. Beneath the district drilling supervisors were the company tool pushers. Each tool pusher was in charge of the overall drilling operations and the drilling crew of the particular rig to which he was assigned. A drilling crew consisted of a driller or motorman, three floor hands and a derrickman. While working in the derrick the derrickman stands on a rectangular platform referred to as the ‘monkey board’, some 80' above the rig floor. On the left and right sides of the monkey board there are sets of metal bars (9 or 10 in number) referred to as the fingers which extend almost all the way to the monkey board from a U-shaped metal plate which surrounds it. The fingers are spaced 5 or 6 inches apart and they serve as racks for the 90 foot stands of drill pipe. When the rig is assembled and the equipment is fitting properly the monkey board fits into a slot between and level with the left and right sets of fingers. The derrickman’s job is to remove the drill pipe from the fingers as it is being put into the drill hole and re-rack the pipe as it is being taken out of the drill hole. While doing this he often has to step on the fingers to reach for pipe at the rear of the fingers. He, therefore, wears a harness around the waist secured to the derrick by a safety line. During the racking and unracking process the fingers frequently get bent or pinched-in and the pipe will jam. When *200 this occurs the derrickman, with the aide of the floor hands, uses a cable referred to as the air hoist line to straighten the fingers and to pull jammed pipe out of the fingers.
On the day of the accident there were some bent fingers and the plaintiff was using the air hoist line to free a pipe. The accident occurred when, as he was standing on the fingers reaching for a stand of drill pipe, either his foot slipped off of one of the fingers or the air hoist line hit him in the back causing him to fall between one of the sets of fingers and the monkey board and to strike the lower portion of his back on the edge of the monkey board.
As a result of the foregoing the plaintiff instituted this action for damages for his personal injuries alleging negligence on the part of one or more of the defendants.
In response, the defendants answered denying the allegations of the petition and alleging contributory negligence and assumption of risk on the part of the plaintiff as a bar to his recovery.
The plaintiff contends that as officers or supervisory co-employees of Power Rig Drilling Co., Inc., the defendants owed him a duty to correct unsafe working conditions; that the defective condition of the fingers rendered working conditions in the derrick unreasonably dangerous and unsafe; that the defendants knew or should have known of the existence of this defective condition, and; that they had ample time within which to correct the defective condition. The plaintiff further contends that the defendants’ failure to timely correct the defective condition was a breach of duty which constituted negligence on their part and that such negligence was the sole cause of his accident and resulting injuries.
The defendants contend that the plaintiff failed to sustain the burden of proving that they breached a duty which caused his accident and, alternatively that the plaintiff was contributorily negligent by failing to report the unsafe condition, and, further in the alternative, that the plaintiff voluntarily assumed a known risk by continuing to work under conditions which were known by him to be unsafe.
The law is to the effect that every employer owes a duty to furnish employment which shall be reasonably safe for the employees therein. La.R.S. 23:13. However, as a prerequisite to recovery in an executive officer suit, the plaintiff must establish by a preponderance of the evidence that the employer delegated to one of the defendant executives the fulfilling of a personal duty owed to the plaintiff and that the breach of this duty caused damage to the plaintiff. Further, general administrative responsibility of an executive officer does not fall within the category of a personal duty. Canter v. Koehring Company, 283 So.2d 716 (La.1973); Chrisham v. Blum, 383 So.2d 458 (La.App. 4th Cir. 1980), writ denied.
The Court finds that the evidence fails to establish that any of the defendants owed a personal as opposed to general administrative duty to correct the unsafe conditions which allegedly caused the plaintiff’s accident and resulting injuries and, therefore, that the evidence is insufficient to warrant the imposition of liability on their part. As was hereinabove previously intimated, the evidence reflects that the safety aspects of Power Rig Co., Inc.’s drilling operations was (sic) simply not within the scope of their employment duties. Some of the defendants testified that their knowledge of the actual operation of a drilling rig is very limited and that they rarely, if ever, even visit the drilling sites.
Moreover, the Court finds that the personal duty to correct unsafe working conditions on the rigs was delegated by Power Rig Co., Inc. to its tool pushers. The evidence in this respect discloses that the tool pushers had overall charge of and responsibility for the particular rigs to which they were assigned, that they regularly inspected the rigs while they were disassembled and between drilling loca *201 tions, that the derrickmen reported to the tool pushers when they had problems with unsafe working conditions and, that it was the personal responsibility of the tool pushers to see to it that any such conditions were corrected.
Since the Court finds that it was not the personal duty of any of the defendants to correct the unsafe conditions, which allegedly caused his accident, the plaintiff’s claims against the defendants must be denied.
For the foregoing reasons, judgment will be rendered in favor of the defendants herein and against the plaintiff denying his claims and dismissing his suit.
Judgment will be rendered accordingly.”
The judgment of the trial court is affirmed, at appellant’s cost.
AFFIRMED.